IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARYLYN F. RODGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:26-cv-02102 |
| ) | Judge Edmond E. Chang |
| vs. ) | Magistrate Judge Jeffrey T. Gilbert |
| ) | Random/Cat. 2 |
| THE ALLSTATE CORPORATION and ) | |
| ALLSTATE INSURANCE COMPANY, ) | FILED |
| ) | FEB 25 2026 BT |
| Defendants. ) | THOMAS G. BRUTON |
| | CLERK, U.S. DISTRICT COURT |

## COMPLAINT

Plaintiff, Marylyn F. Rodgers, Pro Se, submits her Complaint against Defendants The Allstate Corporation and Allstate Insurance Company, and states as follows:

### I. JURISDICTION AND VENUE

1. This action arises under the laws of the United States, including, without limitation, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices alleged herein were committed within this District, and Defendants conduct substantial and continuous business operations in this District.

4. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 29, 2025 (Charge No. 440-2025-06527). The EEOC issued a Determination and Notice of Right to Sue dated December 3, 2025. Plaintiff has commenced this action within ninety (90) days of her receipt of that Notice and has therefore timely exhausted her administrative remedies. See **Exhibit A** attached hereto.

5. Plaintiff acknowledges the existence of an arbitration agreement purporting to govern certain disputes arising out of her employment. Plaintiff files this action to preserve her rights under applicable law, including the enforcement of statutory limitations periods, and expressly does not waive any rights or remedies available to her, including the right to arbitrate claims as required.

## II. PARTIES

6. Plaintiff Marylyn F. Rodgers ("Plaintiff") is an individual and former employee of Defendants who, at all relevant times, performed work for Defendants within the Northern District of Illinois.

7. Defendant Allstate Insurance Company is a corporation authorized to transact business in Illinois and in this District and, at all relevant times, was Plaintiff's employer within the meaning of Title VII.

8. Upon information and belief, Defendant The Allstate Corporation is a corporate parent and/or affiliated entity of Allstate Insurance Company that maintained centralized control over employment policies, performance evaluation systems, and workforce reduction decisions affecting Plaintiff and similarly situated employees, and is therefore jointly and severally liable for the unlawful actions described herein.

## III. FACTUAL BACKGROUND COMMON TO COUNTS I - V

9. In or around July 2022, Defendants hired Plaintiff as a Senior Manager, Corporate Giving, Growth and Employee Activation, within Defendants' Corporate Brand function.

10. In that capacity, Plaintiff was responsible for, among other things, advancing corporate giving initiatives, developing and implementing employee engagement strategies, and leading equity-related programming aligned with Defendants' stated corporate values and public commitments.

11. Plaintiff performed her duties competently, diligently, and in good faith, and was entrusted with responsibilities requiring cross-functional collaboration, public-facing credibility, and internal leadership.

12. As part of her position, Plaintiff engaged in work relating to equity, inclusion, and employee activation, and raised concerns regarding internal practices, decision-making processes, and their impact on employees.

13. Plaintiff communicated these concerns through established internal channels and participated in processes designed by Defendants to surface, evaluate, and address workplace issues.

14. Plaintiff's conduct in raising concerns and engaging in equity-related advocacy constituted protected activity under Title VII and other applicable federal law.

15. Within weeks of Plaintiff's engagement in protected activity, Defendants' treatment of Plaintiff materially changed.

16. Plaintiff was subjected to adverse treatment, including, but not limited to, heightened and unwarranted scrutiny, exclusion from key processes, and conduct that undermined her role, credibility, and professional standing within the organization.

17. Among other events, Plaintiff was publicly singled out during a facilitated team intervention while she was executing leadership-approved strategy and was left without meaningful leadership support as the discussion escalated. Following this incident, Plaintiff encountered obstruction of previously approved initiatives, removal and reassignment of responsibilities, and exclusion from key strategic communications and decision-making processes. Collectively, this conduct created a work environment that was hostile, humiliating, and destabilizing, interfered with Plaintiff's ability to perform her job, and caused her significant distress.

18. In or around January 2025, Defendants terminated Plaintiff's employment.

19. Defendants purported to justify Plaintiff's termination as part of a reduction in force; however, that rationale was inconsistent with Plaintiff's prior positive performance feedback and was preceded by irregularities in the performance evaluation process, including conflicting review timelines and alterations to documentation. Additionally, Plaintiff's responsibilities had already been reduced and reassigned prior to her termination without documented performance justification.

20. Defendants' stated reasons for Plaintiff's termination were false and pretextual. Plaintiff's protected activity, as well as her race and gender, were motivating and/or determinative factors in Defendants' decision to terminate her employment.

21. As a direct and proximate result of Defendants' conduct, Plaintiff suffered economic losses, including loss of employment, wages, and employee benefits.

22. Plaintiff also suffered severe emotional distress, including medically documented psychological harm, as well as damage to her professional reputation and career prospects.

23. Plaintiff's termination occurred during a period in which employees engaged in equity-related work and advocacy were disproportionately subjected to adverse employment actions, including role eliminations and terminations.

24. Plaintiff's experience was not isolated, but occurred within a broader context indicative of disparate impact and adverse treatment of employees engaged in protected activity, including through targeting, undermining of professional standing, and other retaliatory measures.

## IV. LEGAL CLAIMS

### COUNT I – RETALIATION

(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

25. Plaintiff realleges and incorporates by reference paragraphs 1 through 24 as though fully set forth herein.

26. Plaintiff engaged in protected activity under Title VII, including raising good-faith concerns regarding workplace practices, equity-related matters, and conduct affecting employees.

27. Defendants were aware of Plaintiff's protected activity.

28. Following Plaintiff's protected activity, and within a relatively short temporal proximity to Defendants' awareness of that activity, Defendants subjected Plaintiff to materially adverse actions, including, but not limited to, heightened scrutiny, exclusion from key processes, undermining of her role, hostile treatment, and termination.

29. Defendants' actions would dissuade a reasonable employee from engaging in protected activity.

30. There is a causal connection between Plaintiff's protected activity and Defendants' adverse actions.

31. Defendants' conduct constitutes unlawful retaliation in violation of Title VII.

## COUNT II – DISCRIMINATION
(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

32. Plaintiff realleges and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33. Plaintiff is a member of protected classes under Title VII, including with respect to race and gender.

34. Plaintiff was qualified for her position and performed her job duties competently and consistently exceeded expectations.

35. Defendants subjected Plaintiff to adverse employment actions, including but not limited to disparate treatment, undermining of her professional standing, and termination.

36. Plaintiff's race and gender were motivating and/or determinative factors in Defendants' adverse actions toward her.

37. Defendants treated Plaintiff less favorably than similarly situated employees in comparable leadership roles who were outside of her protected classes.

38. Defendants' conduct constitutes unlawful discrimination in violation of Title VII.

## COUNT III – HOSTILE WORK ENVIRONMENT
(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. Plaintiff was subjected to unwelcome conduct related to her protected characteristics and her engagement in protected activity.

41. The conduct to which Plaintiff was subjected was sufficiently severe or pervasive to alter the terms and conditions of her employment and to create a hostile, humiliating, and abusive work environment.

42. Defendants knew or should have known of the hostile and retaliatory conduct and failed to take prompt, effective, and appropriate remedial action.

43. As a result of Defendants' conduct, Plaintiff suffered harm, including emotional distress and professional damage.

44. Defendants' conduct constitutes a hostile work environment in violation of Title VII.

## IV. DAMAGES

45. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer significant damages.

46. Plaintiff has suffered economic losses, including, but not limited to, loss of employment, lost wages, lost benefits, and disruption to her anticipated career trajectory.

47. Plaintiff has incurred and will continue to incur economic losses as a result of Defendants' actions, including loss of future earning capacity attributable to the circumstances of her termination and the professional consequences that followed.

48. Plaintiff suffered severe emotional distress, mental anguish, and psychological harm as a result of Defendants' retaliatory and discriminatory conduct, including the hostile work environment and termination described herein.

49. Plaintiff experienced serious workplace trauma due to Defendants' conduct—particularly the recurrence of public targeting, retaliation, and professional destabilization— which triggered and exacerbated trauma-related symptoms that continue to affect her, including manifestations consistent with post-traumatic stress.

50. Defendants knew or reasonably should have known that subjecting an employee to retaliatory conduct, public humiliation, and destabilization following protected activity could cause significant psychological harm, particularly where the employee had raised concerns in good faith and relied upon institutional safeguards.

51. Following her termination, Plaintiff experienced a serious mental health crisis. A request made on Plaintiff's behalf for additional time to review severance materials as an accommodation related to this condition was not honored by Defendants, further compounding the harm she experienced.

52. Plaintiff's emotional and psychological harm is supported by medical documentation.

53. Plaintiff aspired to work for Defendants in reliance on Defendants' publicly stated commitments to equity, integrity, and non-retaliation, and Plaintiff relied on those commitments in accepting and continuing her employment.

54. Defendants' conduct—including retaliation following protected activity and alteration of Plaintiff's performance record—undermined Plaintiff's ability to trust the fairness and integrity of corporate institutions that publicly espouse equity values while failing to uphold them internally.

55. As a result of Defendants' actions and Plaintiff's experience of institutional harm, Plaintiff has suffered a loss of confidence in the viability of traditional corporate employment as a safe or sustainable professional environment.

56. Defendants' conduct has materially affected Plaintiff's future employment prospects by foreclosing or discouraging participation in corporate roles, causing career displacement and long-term professional harm.

57. Defendants' conduct caused damage to Plaintiff's professional reputation, standing, and credibility, including by undermining her role and altering her employment record.

58. Plaintiff experienced loss of professional momentum, disruption of professional relationships, and diminished trust in institutional processes that are ostensibly designed to protect employees who raise concerns in good faith.

59. Plaintiff's claims are supported by documentary evidence and corroborating witness testimony, which will be produced in discovery and as otherwise appropriate.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

A. A declaration that Defendants' conduct violated Title VII of the Civil Rights Act of 1964;

B. An award of actual damages, compensatory damages, and punitive damages for economic losses, emotional distress, psychological harm, and professional injury, in an amount to be determined at trial or through alternative dispute resolution;

C. An award of equitable relief as permitted by law, including, but not limited to, appropriate remedial measures to address the effects of Defendants' unlawful conduct;

D. An award of reasonable attorneys' fees, costs, and expenses as authorized by law once retained;

E. An award of pre-judgment and post-judgment interest as permitted by law; and

F. Such other and further relief as the Court deems just and proper.

### VI. ARBITRATION ACKNOWLEDGMENT AND PRESERVATION OF RIGHTS

60. Plaintiff acknowledges the existence of an arbitration agreement purporting to govern certain disputes arising out of her employment with Defendants.

61. Plaintiff brings this action, in part, to preserve her rights under applicable federal law and to comply with statutory deadlines.

62. Nothing in this Complaint is intended to waive, forfeit, or prejudice Plaintiff's rights under the arbitration agreement or applicable law, including any right or obligation to arbitrate claims as required.

63. Plaintiff expressly reserves all rights and remedies available to her in arbitration or in any other appropriate forum.

64. Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Marylyn F. Rodgers*

Marylyn F. Rodgers

50 E. 16th Street #505, Chicago, IL 60616

(312) 823-6507

Mfr1018@outlook.com

# **EXHIBIT A**

EEOC Determination and Notice of Right to Sue
Charge No. 440-2025-06527
Dated December 3, 2025

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/03/2025

**To:** Ms. Marylyn F. Rodgers
50 E. 16th Street #505
CHICAGO, IL 60616
Charge No: 440-2025-06527

EEOC Representative and email:  GRACE GOUNTANIS
INVESTIGATOR
GRACE.GOUNTANIS@EEOC.GOV

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2025-06527.

On behalf of the Commission,

Digitally Signed By: Amrith Kaur Aakre
12/03/2025
Amrith Kaur Aakre
District Director

**Cc:**
Michael Wilder
Allstate Insurance Company
2301 McGee Street., Ste. 800 c/o Littler Mendelson, P.C. - GSC
Kansas City, MO 64108

NA NA
ALLSTATE CORPORATION
50 E. 16th Street #505
CHICAGO, IL 60616

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2025-06527 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street, Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2025-06527 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street, Chicago, IL 60604.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (05/25)

- **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:** Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*